# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**IKECHUKWU HYGINIUS OKORIE**                                          **PLAINTIFF**

**v.**                                              **CIVIL ACTION NO. 2:23-cv-190-TBM-RPM**

**FORREST GENERAL HOSPITAL,**
**KEYSTONE HEALTHCARE, INC.,**
**BRYAN MAXIE, NACOLE DILLON**                                    **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff Dr. Okorie was fired from his position as an Emergency Room Physician at Walthall General Hospital in November 2023 due to complaints from hospital staff and patients regarding his care and behavior. Following his termination, Dr. Okorie filed suit in this Court against Defendants Forrest County General Hospital, Bryan Maxie, Nacole Dillon (collectively the "Forrest General Defendants") and Keystone Healthcare, Inc. ("Keystone"), alleging: (1) breach of contract, (2) tortious interference with contract, (3) defamation, (4) intentional infliction of emotional distress, (5) and declaratory relief. The Forrest General Defendants [12] and Keystone [14] have filed substantially identical motions seeking dismissal.

The Court, considering the motions together, denies both the Forrest General Defendants' Motion to Dismiss [12] and Keystone's Motion to Dismiss [14] finding that complete diversity does exist. Lastly, Dr. Okorie's request for sanctions [18] is denied for failure to comply with Federal Rule of Civil Procedure 11's safe harbor provision.

## I. BACKGROUND AND PROCEDURAL HISTORY

Dr. Okorie was hired as an Emergency Room Physician to provide emergency medicine services at Walthall General Hospital. [13], p. 2. Walthall General Hospital is a critical access

hospital in Tylertown, Mississippi, that has been operated by Forrest County General Hospital ("Forrest General") since 2010. [13], p. 1. At the time of these allegations, Forrest General contracted with Keystone where Keystone agreed to provide emergency medicine services at Walthall General Hospital through physicians and nurse practitioners. [13], p. 2. Dr. Okorie was one of the physicians hired by Keystone to provide emergency medicine services at Walthall General Hospital. [13], p. 2.

Beginning in November 2022 and continuing through October 2023, Forrest General allegedly received complaints from staff and patients at Walthall General Hospital regarding Dr. Okorie's care and behavior. [13], p. 2. Forrest General alleges that Nacole Dillon, the Administrator at Walthall General Hospital, had multiple discussions with Keystone regarding the complaints about Dr. Okorie's care and behavior. [13], pp. 1-2. Due to the ongoing issues with Dr. Okorie, Forrest General decided to terminate his employment. [13], p. 2. Nacole Dillon subsequently notified Keystone of Dr. Okorie's termination. And, as a result, Keystone complied with Forrest General's request and stopped scheduling Dr. Okorie to work at Walthall General Hospital after November 28, 2023. [13], p. 4.

On December 5, 2023, Dr. Okorie filed this action against the Forrest General Defendants and Keystone, alleging: (1) breach of contract against Keystone; (2) tortious interference with contract against all Defendants; (3) defamation against all Defendants; (4) intentional infliction of emotional distress against all Defendants; (5) and declaratory relief against all Defendants. [1], pp. 3-6. Both the Forrest General Defendants and Keystone have moved to dismiss Dr. Okorie's claims under Rule 12(b)(1) alleging lack of subject matter jurisdiction. [12]; [14]. Because the Motions are substantially identical, the Court will address them together beginning with the Forrest General

Defendants' invocation of sovereign immunity and dismissal based on the notice requirement under the Mississippi Tort Claims Act ("MTCA"). [12]. The Court will then address both Defendants' arguments that there is no federal question alleged in the Complaint, and alternatively, complete diversity of citizenship is lacking. [12], p. 1; [14], p. 1.

## II. STANDARD OF REVIEW

"Rule 12(b)(1) motions challenge the subject matter jurisdiction of the district court, with the burden of proof on the party asserting jurisdiction." *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 415 (5th Cir. 2023). "Sovereign immunity issues are appropriately brought under Rule 12(b)(1)." *Necaise v. May*, 700 F. Supp. 3d 469, 478 (S.D. Miss. 2023) (citations and internal quotations omitted); *see also Patel v. United States Dept. of Agric.*, No. 3:17-cv-59-HSO-JCG, 2017 WL 11697929, at *2 (S.D. Miss. Sep. 1, 2017) ("'The State Defendants' argument that Plaintiffs' claims against them should be dismissed on Eleventh Amendment sovereign immunity grounds is a challenge to the Court's subject-matter jurisdiction that is evaluated under Federal Rule of Civil Procedure 12(b)(1).'").

"A district court may dismiss a case under Rule 12(b)(1) based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *In re S. Recycling, L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020) (internal citations and quotations omitted). Because the burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir. 1980).

A motion to dismiss for lack of subject matter jurisdiction can mount "either a facial attack" where the motion is filed without evidence "or factual attack" where a party supports its motion with evidence. *Chaisson v. United States*, No. 23-10551, 2024 WL 81581, at *2 (5th Cir. Jan. 8, 2024) (citations omitted). "A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. A 'factual attack,' however, challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Cell Sci. Sys. Corp. v. Louisiana Health Serv.*, 804 F. App'x 260, 263 (5th Cir. 2020). "In order to defeat this factual attack, Plaintiffs 'must prove the existence of subject-matter jurisdiction by a preponderance of the evidence and [are] obliged to submit facts through some evidentiary method to sustain [their] burden of proof.'" *Chaisson*, 2024 WL 81581, at *2 (citations omitted). Courts also liberally construe filings of *pro se* litigants. *See Collins v. Dallas Leadership Found.*, 77 F.4th 327, 330 (5th Cir. 2023).

## III. SOVEREIGN IMMUNITY

The Forrest General Defendants argue that the Eleventh Amendment provides Forrest General and its employees—Bryan Maxie and Nacole Dillon—immunity as to Dr. Okorie's claims because Forrest General, as "a community hospital, [] is a political subdivision of the state of Mississippi, thus it is an arm of the State." [13], p. 4. Because the sovereign immunity issue may be dispositive of the claims asserted against the Forrest General Defendants, the Court begins its analysis there. *See United States v. Tex. Tech Univ.*, 171 F.3d 279, 285–86 n.9 (5th Cir. 1999) (describing Eleventh Amendment immunity as jurisdictional in nature). "[T]he sovereign

4

immunity issue must be resolved before further litigation (including discovery and motions for summary judgment) proceeds, so that the States are not subjected to litigation to which they have not consented." *Texas v. Caremark, Inc.*, 584 F.3d 655, 660 n.2 (5th Cir. 2009).

"[T]he Eleventh Amendment bars suits in federal court . . . unless the state has waived its immunity." *Crittendon v. Health & Hum. Servs. Comm'n*, No. 23-50411, 2023 WL 8613618, at *1 (5th Cir. Dec. 13, 2023) (*per curiam*) (citations omitted). Mississippi has expressly preserved its right to sovereign immunity under the Eleventh Amendment. *See Delaney v. Mississippi Dep't of Pub. Safety*, No. 3:12-cv-229-TSL-MTP, 2013 WL 286365, at *3 (S.D. Miss. Jan. 24, 2013), *aff'd*, 554 F. App'x 279 (5th Cir. 2014) (citing MISS. CODE ANN. § 11-46-3(1) (providing that "the 'state' and its 'political subdivisions,' . . . are not now, have never been and shall not be liable, and are, always have been and shall continue to be immune from suit at law or in equity")); *see also Corn v. Mississippi Dep't of Pub. Safety*, 954 F.3d 268, 274 (5th Cir. 2020) (quoting MISS. CODE ANN. § 11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.")). "A state's sovereign immunity extends to so-called arms of the state, entities which are effectively the state itself because the state is the real, substantial party in interest to the lawsuit." *Hopkins v. Wayside Sch.*, No. 23-50600, 2024 WL 3738478, at *4 (5th Cir. Aug. 9, 2024) (citations and quotations omitted).

Here, the Forrest General Defendants bear the burden of proof in demonstrating that they are entitled to Eleventh Amendment sovereign immunity as an arm of the state. *See Skelton v. Camp*, 234 F.3d 292, 297 (5th Cir. 2000) (The burden of proof rests with the entity asserting

immunity); *Hopkins*, 2024 WL 3738478, at *5 (reversing the district court in concluding that the defendant had not met its burden of proving that it is entitled to Eleventh Amendment immunity).

The Forrest General Defendants assert their immunity defense with little information and provide no case law that states Forrest General (or any community hospital) is an arm of the state. Not only do the Forrest General Defendants fail to provide authority in support of their claim that a community hospital and its employees are entitled to immunity under the Eleventh Amendment, they base their entire argument on the fact that community hospitals are political subdivisions. But, the Supreme Court has "consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a 'slice of state power.'" *Lake Country Estates, Inc. v. Tahoe Regl. Plan. Agency*, 440 U.S. 391, 401 99 S. Ct. 1171, 59 L. Ed. 2d 401 (1979); *see also Black v. N. Panola Sch. Dist.,* 461 F.3d 584, 596 (5th Cir. 2006) ("lesser governmental entities such as counties and municipalities are not considered arms of the state for purposes of Eleventh Amendment immunity.").

To be sure, numerous courts in the Fifth Circuit have refused to provide Eleventh Amendment immunity to certain public hospitals or healthcare facilities. *See, e.g., Farias v. Bexar Cnty. Bd. of Trustees for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 874–75 (5th Cir. 1991) (reversing the district court in concluding that the Bexar County Mental Health Retardation Center was entitled to Eleventh Amendment immunity); *Laje v. R. E. Thomason Gen. Hosp.*, 665 F.2d 724, 727–28 (5th Cir. 1982) (holding that a hospital that was part of the El Paso County Hospital District was "not an arm of the state for Eleventh Amendment purposes."); *Harper v. Travis Cnty. Emergency Servs. Dist. 5*, No. 1-17-cv-01174-AWA, 2019 WL 96310, at *2 (W.D. Tex. Jan. 3, 2019) (holding that a County emergency services district and an individual were not immune

under the Eleventh Amendment). Granted, these cases analyze state law outside of Mississippi. But, the Forrest General Defendants make no mention at all of the six-part balancing test articulated in *Clark v. Tarrant County*, 798 F.2d 736 (5th Cir. 1986), which is used to determine whether an entity is an arm of the state. In sum, the Forrest General Defendants' have failed to meet their burden of proof. Thus, the Motion to Dismiss [12] is denied on such grounds.

### IV. MISSISSIPPI TORT CLAIMS ACT

The Forrest General Defendants argue that they are entitled to pre-suit notice pursuant to the MTCA's notice of claim requirement. [12], p. 1; [13], pp. 5-6; [21], p. 5. "The State of Mississippi and its political subdivisions are generally immune from suit." *Patterson v. Mississippi Dep't of Mental Health*, No. 1:22-cv-196-SA-DAS, 2023 WL 4242755, at *5 (N.D. Miss. June 28, 2023) (citing MISS. CODE ANN. § 11-46-3). "However, the MTCA waives sovereign immunity for torts committed by governmental entities or their employees acting within the course and scope of their employment." *Id.* (citing MISS. CODE ANN. § 11-46-5(1)); *see, e.g., Dixon ex rel. Dixon v. Alcorn Cnty. Sch. Dist.*, No. 3:10-cv-92-GHD, 2012 WL 273079, at *2 (N.D. Miss. Jan. 30, 2012) ("Defendants are subject to suit for claims arising out of the torts of governmental entities and their employees while acting within the course and scope of their employment"). "This waiver is subject to certain conditions, including that a claimant must file a notice of claim with the governmental entity at least 90 days before instituting suit." *Patterson*, 2023 WL 4242755, at *5 (citing MISS. CODE ANN. § 11-46-11(1)).

"Importantly, certain intentional torts are excluded from the MTCA's waiver of immunity." *Id.* (citing *Zumwalt v. Jones Cnty. Bd. of Supervisors*, 19 So. 3d 672, 688 (Miss. 2009) ("[MISS. CODE ANN.] § 11-46-5 provides that torts constituting fraud, malice, libel, slander,

7

defamation, or any criminal offense other than traffic violations are not within the course and scope of employment.") (internal quotations omitted)). "Under Section 11–46–5(2), torts in which malice is an essential element are not within the course and scope of employment." *Univ. of Miss. Med. Ctr. v. Oliver*, 235 So. 3d 75, 82 (Miss. 2017) (citing *Zumwalt*, 19 So. 3d at 688.) (quotations omitted). "Thus, these intentional torts are outside the scope of the MTCA's waiver of immunity, and the MTCA does not apply. Rather, any legal action against a governmental employee for these intentional torts must necessarily proceed against him or her as an individual." *Id*. (citation and quotations omitted).

Per Dr. Okorie's Response, his claims are not subject to the MTCA's notice requirement. [20], pp. 6-7. The Court agrees. Dr. Okorie's claims against the Forrest General Defendants are for tortious interference with contract, defamation, and intentional infliction of emotional distress, which are torts that fall beyond the scope of the MTCA's notice requirement. *See Patterson, 2023 WL 4242755,* at *5-6 ("Where a tort falls into one of these categories, it is beyond the scope of the MTCA, and the notice requirement does not apply.") (citing *Zumwalt*, 19 So. 3d at 688); *see, e.g., Springer v. Ausbern Constr. Co.*, 231 So. 3d 980, 988 (Miss. 2017) (claim for tortious interference with contract against county engineer in his individual capacity was not subject to Tort Claims Act's pre-suit notice requirements); *Weible v. Univ. of S. Mississippi*, 89 So. 3d 51, 64 (Miss. Ct. App. 2011) ("considering the plaintiff's intentional infliction of emotional distress claim to fall outside the scope of the MTCA"); *Jones v. City of Hattiesburg*, 228 So. 3d 816, 819–20 (Miss. Ct. App. 2017) (finding that plaintiff's intentional infliction of emotional distress claim was based on malicious conduct because it arose out of the same acts as her defamation claim). Thus, the Forrest General Defendants' argument fails and their Motion to Dismiss [12] is denied on such grounds.

## V. FEDERAL QUESTION AND DIVERSITY JURISDICTION

The Court will first address the argument that Dr. Okorie fails to plead a basis for federal question jurisdiction on the face of his Complaint, and will then turn to the alternative argument that diversity jurisdiction is lacking.

### A.  Federal Question

"Because federal courts have limited jurisdiction, parties must make clear, distinct, and precise affirmative jurisdictional allegations in their pleadings." *SXSW, L.L.C. v. Fed. Ins. Co.*, 83 F.4th 405, 407 (5th Cir. 2023) (citation and quotation omitted). "The plaintiff's federal question must appear on the face of his well-pleaded complaint." *Quinn v. Guerrero*, 863 F.3d 353, 358–59 (5th Cir. 2017) (citation omitted). "The plaintiff need not specifically cite a federal provision . . ., but he must allege facts sufficient to establish a colorable issue of federal law." *Id.* at 359. If state-law claims are asserted, "original federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one or the other claim is 'really' one of federal law." *Thompson v. Mississippi Power Co.*, No. 2:24-cv-13-KS-MTP, 2024 WL 3390607, at *2 (S.D. Miss. Apr. 12, 2024).

Dr. Okorie asserts in his Complaint that "[t]his court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 since [the case] involves the violations of federal law." [1], p. 2. However, he does not allege any federal claims. [1]. In fact, the Complaint only asserts state-law claims for (1) breach of contract, (2) tortious interference with contract, (3) defamation, (4) intentional infliction of emotional distress, and (5) declaratory relief. [1], pp. 3-6. None of Dr. Okorie's claims have any substantial, disputed question of federal law as necessary elements. Likewise, none of Dr. Okorie's claims actually arise under federal law or even allege any facts

9

sufficient to establish a colorable issue of federal law. As a result, the Court cannot conclude that federal question jurisdiction exists. *See Kirkland v. Ingalls Shipyard*, No. 1:17-cv-141-HSO-JCG, 2017 WL 2450292, at *2 (S.D. Miss. June 6, 2017) (dismissing case for lack of subject matter jurisdiction where plaintiff's complaint appears to assert only state-law claims); *see also Flowers v. Acuity Brands Lighting*, No. 3:19-cv-2090-S-BK, 2019 WL 10835996, at *2 (N.D. Tex. Oct. 1, 2019) (dismissing complaint for lack of subject matter jurisdiction without opportunity to amend when there was clearly a lack of diversity and only state tort claims were pled).

In sum, federal question jurisdiction does not exist. But, because Dr. Okorie also claims this Court has jurisdiction over the claims based on diversity of citizenship, the Court now turns to the Forrest General Defendants' and Keystone's alternative argument that diversity jurisdiction is lacking.

**B.  Complete Diversity of Citizenship**

The Defendants argue that Dr. Okorie's Complaint fails to allege complete diversity of the parties "because an allegation of residency alone does not satisfy the requirement of an allegation of citizenship." [15], pp. 4-5; *see also* [13], p. 3. In addition to Dr. Okorie allegedly improperly pleading his citizenship, "the evidence indicates that [Dr. Okorie] is a citizen of Mississippi, not Texas." [14], p. 2., ¶ 7; *see also* [13], p. 4.

"For the district court to have diversity jurisdiction under 28 U.S.C. § 1332, all persons on one side of the controversy [must] be citizens of different states than all persons on the other side at the time the complaint was filed." *Soaring Wind Energy, L.L.C. v. Catic USA Inc.*, 946 F.3d 742, 750 (5th Cir. 2020) (quotations omitted). "The burden of proving that complete diversity exists rests upon the party who seeks to invoke the court's diversity jurisdiction." *Stafford v. Mobile Oil*

*Corp.*, 945 F.2d 803, 804 (5th Cir. 1991). "The party asserting diversity jurisdiction must distinctly and affirmatively allege [ ] the citizenship of the parties." *Smith v. Toyota Motor Corp.*, 978 F.3d 280, 282 (5th Cir. 2020) (citations and quotation omitted). "The court has wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction." *I F G Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal Dist.*, 82 F.4th 402, 408 (5th Cir. 2023) (citation omitted). "Although we liberally construe the filings of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel, the plaintiff must prove, by a preponderance of the evidence, that the court has jurisdiction based on the complaint and evidence." *Dos Santos v. Belmere Ltd. P'ship*, 516 F. App'x 401, 402-03 (5th Cir. 2013) (citations and quotations omitted). Dr. Okorie has met his burden.

For an individual, "citizenship has the same meaning as domicile, and the place of residence is prima facie the domicile." *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) (citation and internal quotations omitted). Nevertheless, an allegation of residency alone does not satisfy the requirement of an allegation of citizenship because citizenship and residence are not synonymous terms. *Id.* "Citizenship requires not only [r]esidence in fact but also the purpose to make the place of residence one's home." *Id.* (citation and quotations omitted). "However, [a] failure to allege facts establishing jurisdiction need not prove fatal to a complaint." *Accordant Commc'ns, L.L.C. v. Sayers Constr., L.L.C.*, No. 20-50169, 2020 WL 7663821, at *2 (5th Cir. Dec. 3, 2020); *see also Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019) ("The filings of a *pro se* litigant are to be liberally construed, . . . And a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]") (internal citation and quotations omitted).

Here, Dr. Okorie clarified his citizenship in a subsequent pleading. [17], p. 2. Per the Notice of Change of Address and Clarification of Diversity of Citizenship [17], Dr. Okorie has distinctly and affirmatively stated and put forth evidence that his "domicile and principal place of residence have been, and continue to be, in the State of Texas." [17], p. 2; *See I F G Port Holdings, L.L.C.*, 82 F.4th at 408 ("[d]efective allegations of jurisdiction may be amended . . . in the trial or appellate courts.") (citing *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 920 n.39 (5th Cir. 2001)); *see, e.g., Int'l Turbine Servs., LLC v. Puerto Quetzal Power, LLC,* No. 1:21-cv-1154, 2023 WL 4987603, at *5 (W.D. Tex. Apr. 20, 2023) (finding that the parties are completely diverse, and the Court has subject matter jurisdiction to hear the case after plaintiff provided an amended corporate disclosure statement clarifying its citizenship); *Madrid v. Galp Waters Ltd. P'ship*, No. 12-3252, 2014 WL 12539253, at *1 n.4 (S.D. Tex. June 6, 2014) (finding diversity jurisdiction based on the defendants' sealed "statement disclosing the citizenship of those persons composing [their] partnerships").

Indeed, "[a] person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *Bradford v. Minnesota Life Ins. Co.*, No. 1:19-cv-112-LG-RHW, 2019 WL 13198797, at *2 (S.D. Miss. Oct. 17, 2019) (citing *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974)); *see also Stewart v. Entergy Corp.*, 35 F.4th 930, 934 n.3 (5th Cir. 2022) (citing *Veranda Assocs., L.P. v. Hooper*, 496 F. App'x 455, 457 (5th Cir. 2012) (listing factors used to determine domicile)).

In arguing that complete diversity does not exist, the Defendants point out that Dr. Okorie's voluntary bankruptcy petition filed on February 27, 2019, lists Dr. Okorie's address in Hattiesburg, Mississippi. [12-1], p. 2. Also, a pleading from his ongoing bankruptcy case, filed just three days after he filed his Complaint before this Court, identifies Dr. Okorie's mailing address to

12

be in Hattiesburg, Mississippi. [14-1], p. 3. The record further reflects that Dr. Okorie used a Hattiesburg mailing address in his bankruptcy case as recently as January 22, 2024. [14-1], p. 3. And, Dr. Okorie's Hattiesburg mailing address has been present on numerous pleadings filed before this Court—the most recent of which was filed on February 7, 2024. [18] p. 4. While certainly eyebrow raising, in light of Dr. Okorie's Response, this Court is unconvinced that Mississippi is Dr. Okorie's domicile.

To be sure, Dr. Okorie clarified that his tax returns for the last two years have been filed with an address in "Collin County, Texas." [17], p. 2. Moreover, Dr. Okorie has a Texas driver's license, a Collin County voter registration card, and a utility bill from the City of Frisco, Texas. [17-1], [17-2], and [17-3].[1] These are all factors used to determine domicile. *See Veranda Assocs., L.P.*, 496 F. App'x at 457 (listing factors the court should consider when litigant's intention is to establish domicile. Relevant factors as to here are where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, and maintains a home for his family.). Additionally, Dr. Okorie's actions suggest that his domicile is in Texas. In Dr. Okorie's pleadings, since clarifying his domicile, his mailing address is in Frisco, Texas. *See* [17];[24]; [25]; [41]; [43]; [45]; *see also Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954) ("[m]ere mental fixing of citizenship is not sufficient" because "what is in another man's mind must be

---

[1] *See, e.g., Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 816 (5th Cir. 2007) (identifying "driver's and other licenses" as a factor probative of citizenship); *Evans v. Enterprise Products Partners, LP*, 426 F. Supp. 3d 397, 405 (S.D. Tex. 2019) ("Texas driver's licenses are also probative of an intent to remain in Texas, as a person is unlikely to obtain a driver's license in a state he does not intent to remain in for some time."); *Saunders v. Door Dash, Inc.*, No. 20-cv-05825, 2021 WL 528767, at *5 (N.D. Cal. Feb. 12, 2021) (observing that "data regarding drivers' licenses is particularly probative" of domicile); *Collins v. Golden Gate Bell, LLC*, No. 18-cv-06442, 2019 WL 2523571, at *3 (N.D. Cal. June 19, 2019) ("holding a driver's license or other identification issued by a state is strong evidence of domicile in that state.").

determined by what he does as well as by what he says."); *USAA Life Ins. Co. v. McCabe*, No. 3:23-cv-393-CWR-LGI, 2024 WL 1218986, at *4 (S.D. Miss. Mar. 21, 2024) (same).

Moreover, it appears that the Defendants have abandoned their diversity of citizenship argument anyway. *See Roe v. Johnson Cnty.*, No. 21-10890, 2023 WL 117826, at *3 n.5 (5th Cir. Jan. 5, 2023) ("A party who inadequately briefs an issue is considered to have abandoned the claim.") (citation omitted). The Forrest General Defendants' Rebuttal does not attempt to argue that complete diversity is lacking. *See* [21]. Additionally, Keystone did not submit a Rebuttal to Dr. Okorie's Response [19] to its Motion to Dismiss. Rather, Keystone's only response after Dr. Okorie's clarification, was Keystone's Joinder to the Forrest General Defendants' Response in Opposition [22] to Dr. Okorie's request for sanctions. [18].

For all the reasons stated above, the Forrest General Defendants' Motion to Dismiss [12] and Keystone's Motion to Dismiss [14] are denied as to there being a lack of complete diversity.

### VI. Compliance with Rule 11's Safe Harbor Provision

The Court will now address Dr. Okorie's request for sanctions. [18], p. 3. As a preliminary matter, "[f]ederal law, rather than state law, invariably governs procedural matters in federal courts." *Camacho v. Tex. Workforce Comm'n*, 445 F.3d 407, 409 (5th Cir. 2006); *see also Olson v. Schnauder*, 841 F. App'x. 637, 640 (5th Cir. 2020) ("federal courts sitting in diversity apply state substantive law and federal procedural law."). Because this Court is sitting in diversity, Dr. Okorie's request for sanctions is governed by Federal Rule of Civil Procedure 11. [1], p. 2.

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." FED. R. CIV. P. 11(c)(1). "Rule

14

11's safe harbor provisions require a party seeking sanctions to serve the motion on the opposing party and then wait 21 days before filing the motion." *Kennard L. P.C. v. United Airlines, Inc.*, No. 23-20430, 2024 WL 3717272, at *3 (5th Cir. Aug. 8, 2024). The Fifth Circuit Court of Appeals has continually held that "strict compliance with Rule 11 is mandatory." *Askins v. Hagopian*, 713 F. App'x 380, 380-81 (5th Cir. 2018) ("A party's failure to comply with the safe harbor provision generally precludes a district court from granting the party's motion for sanctions under Rule 11.").

Here, Dr. Okorie filed his Motion for Sanctions the day after the Forrest General Defendants and Keystone filed their Motions to Dismiss. [18]. Both the Forrest General Defendants and Keystone allege that Dr. Okorie failed to give the requisite "safe harbor" notice before filing his motion. [22], pp. 2-3 and [23], p. 2. In his Reply [25], Dr. Okorie argues that the immediate and ongoing harm caused by the defendants' statements justifies filing his motion without the delay of the safe harbor period. [25], p. 2, ¶ 3. Thus, it is undisputed that Dr. Okorie did not comply with Rule 11's safe harbor notice requirement. The request for sanctions is therefore denied for failure to follow the necessary procedures pursuant to Rule 11. *See Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995) (failure to comply with "safe harbor" provision precluded imposition of sanctions); *see also Hopson v. Specialized Loan Servicing, LLC*, No. 3:17-cv-832-DPJ-FKB, 2018 WL 1178959, at *2 (S.D. Miss. Mar. 6, 2018), *amended*, No. 3:17-cv-832-DPJ-FKB, 2018 WL 2449103 (S.D. Miss. Mar. 20, 2018) (plaintiff's motions for sanctions were denied where there was no suggestion that they complied with the safe-harbor provision by giving 21-days' notice before filing the motions).

## VII. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the Forrest General Defendants' Motion to Dismiss [12] is DENIED.

IT IS FURTHER ORDERED AND ADJUDGED that Keystone Healthcare, Inc.'s Motion to Dismiss [14] is DENIED.

IT IS FURTHER ORDERED AND ADJUDGED that Dr. Okorie's Motion for Sanctions [18] is DENIED.

IT IS FURTHER ORDERED AND ADJUDGED that Dr. Okorie's Motion to Expedite Decision [45] is DENIED AS MOOT.[2]

This, the 30th day of September, 2024.

_____
TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE

---

[2] The Court has ruled on the Motions to Dismiss. Therefore, Dr. Okorie's Motion to Expedite Decision [45] on the Defendants' Motions is moot. *See Salgado v. Federal Bureau of Prisons*, 220 F. App'x 256, 257 (5th Cir. 2007) ("[A]n action is moot when the court cannot grant the relief requested by the moving party."); *see, e.g., Williams v. Hartford Life & Accident Ins. Co.*, No. 3:17-cv-927-CWR-FKB, 2018 WL 1885783, at *1 n.1 (S.D. Miss. Apr. 19, 2018) ("[Plaintiff] filed a Motion for Extension of Time to File Response on February 16, 2018. He filed his response on February 23, 2018, before the Court ruled on his Motion. Therefore, the Motion is moot.").